## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KEVIN J.,                          )
                                   )
                Plaintiff,         )
                                   )
        v.                         )          1:22CV466
                                   )
KILOLO KIJAKAZI,                   )
Acting Commissioner of Social      )
Security,                          )
                                   )
                Defendant.         )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kevin J., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), Plaintiff has moved for judgment (Docket Entry 11; see also Docket Entry 12 (Plaintiff's Memorandum)), and the Commissioner has submitted a dispositive brief in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 15). For the reasons that follow, the Court should enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI on January 28, 2020 (Tr. 372-79), alleging a disability onset date of November 15, 2010 (see Tr. 372). Upon denial of those applications initially (Tr. 271-82, 303-07) and on reconsideration (Tr. 283-97, 309-18), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 319-21). Prior to Plaintiff's hearing, his counsel submitted a letter to the ALJ requesting that she reopen Plaintiff's "prior application [for SSI] which was protectively filed on October 9, 2018," and "amend[ing] his alleged onset date to October 9, 2018." (Tr. 390 (bold font omitted).) Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 231-70.) The ALJ subsequently denied Plaintiff's request to reopen the denial of his prior SSI application (see Tr. 11-12), and ruled that Plaintiff did not qualify as disabled under the Act (Tr. 8-25). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 370-71, 485-89), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since January 28, 2020, the application date.

. . .

2

2.   [Plaintiff] has the following severe impairments: degenerative disc disease; osteoarthritis; obesity; hypertension; asthma; migraines; idiopathic intracranial hypertension; vertigo; and hearing loss.

.  .  .

3.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .

4.   .  .  .  [Plaintiff] has the residual functional capacity to perform a range of light work .  .  .  .   [Plaintiff] has been capable of lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently.  He has been able to sit for six hours in an eight-hour workday, as well as stand and/or walk for a combined total of six hours in an eight-hour workday.  [Plaintiff] has been incapable of climbing ladders, ropes, or scaffolds, and has been limited to occasionally balancing as that term is defined in the [Dictionary of Occupational Titles ("DOT")].  He has been further limited to stooping, kneeling, crouching, crawling, and climbing ramps and stairs occasionally. [Plaintiff] has been limited to tolerating a moderate noise level, as that term is defined in the [DOT] and the [Selected Characteristics of Occupations ("SCO")].  He has been incapable of tolerating exposure to vibration, hazardous machinery, or unprotected heights.  [Plaintiff] has been limited to occasional exposure to pulmonary irritants, including dusts, fumes, odors, gasses, and poor ventilation.

.  .  .

5.   [Plaintiff] is unable to perform any past relevant work.

.  .  .

9.   Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

3

. . .

>10. [Plaintiff] has not been under a disability, as defined in the [] Act, since the amended onset date or since January 28, 2020, the date the application was filed.

(Tr. 13-24 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla

4

of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.,* currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174

---

[1] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the

[2]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignment of Error

In Plaintiff's sole issue on review, he asserts that "[t]he ALJ's failure to conduct a proper function-by-function analysis of [Plaintiff]'s impairments and failure to provide a logical bridge between the evidence in the record, [the ALJ's] conclusions and her RFC findings prevents those conclusions from being supported by substantial evidence" (Docket Entry 12 at 6 (bold font and single-spacing omitted)), in violation of Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), and Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual

---

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Case 1:22-cv-00466-WO-LPA   Document 16   Filed 07/05/23   Page 8 of 21

Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 98-6p") (see Docket Entry 12 at 12-13). According to Plaintiff, "[his] testimony is generally consistent with the evidence of record as well as his self-reports earlier in the claim," which reflect "report[s of] exceptional dizziness, nausea, stumbling, dropping things, vomiting/nausea and difficulty with prolonged sitting, standing or walking due to his dizziness." (Id. at 8; see also id. at 7-11 (detailing Plaintiff's subjective statements and medical evidence he believes supports greater limitations in RFC (citing Tr. 249-53, 258-60, 417, 429-31, 434, 446, 455, 2462, 2489-90, 2557, 2596, 2607, 2682, 2903, 3132, 3409, 3437-40, 3480, 3782, 3814, 4117, 4171, 4260, 4290-93, 4307-10, 4359, 5472-76, 5515, 5562, 5567, 5589, 5591-97, 5599-602, 5615, 5625, 5633, 5637, 5644, 5647, 5651, 5656, 5685, 5690, 5697, 5701, 5708, 5734-39, 5780-84, 5947, 5952, 5963, 6266, 6343, 6368, 6525, 6554, 6674, 6721, 6784, 6893, 6898, 7534-45, 8411, 8414, 8556-60, 8601-02, 8663, 8668, 8760-64, 8767)).)[5]  Plaintiff notes that,

_____

[5] Plaintiff additionally cited records dated from June to November of 2021 (Docket Entry 12 at 11 (citing Tr. 72-74, 87-93, 112, 135-36, 221)), but the record before the ALJ did not contain those records (see Tr. 237 (reflecting ALJ's admission of Exhibits 1A through 20F into the record without objection from Plaintiff, and Plaintiff's representation of the record as "complete"), 271-8770 (containing Exhibits 1A though 20F)).  Plaintiff submitted the records in question to the Appeals Council (see Tr. 2 (Appeals Council's Notice acknowledging receipt of new evidence), 41-229 (records Plaintiff submitted to Appeals Council), 230 (cover sheet from Plaintiff's counsel dated December 23, 2021, enclosing the new evidence)), but the Appeals Council found that a portion of the new evidence "d[id] not show a reasonable probability that it would change the outcome of the decision," and that the remaining evidence "d[id] not relate to the period at issue[ and t]herefore[ ] d[id] not affect the [ALJ's] decision about whether [Plaintiff] was disabled beginning on or before August 24, 2021" (Tr. 2).  Before this Court, Plaintiff neither challenged the Appeals Council's

(continued...)

although the ALJ "summarized [Plaintiff's] testimony regarding the symptoms he experienced related to [his idiopathic intracranial hypertension ('IIH') and vertigo]" (id. at 6), the ALJ "failed to include any RFC limitations for [Plaintiff's] need to lay [sic] down to relieve his dizzy spells, his nausea and/or his fatigue" (id. at 12), as well as "limitations accounting for unscheduled breaks, off task behaviors and/or absenteeism" (id.). Plaintiff deems the ALJ's error "harmful" (id. at 16), because "[t]he VE clearly testified that off task behaviors and/or absenteeism at certain levels would preclude all competitive work" (id. (citing Tr. 267-68)). Those contentions lack merit.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. § 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 416.967. Any non-exertional limitations

⁵ (...continued)
above-quoted findings, nor argued for a remand under sentence six of 42 U.S.C. § 405(g) based upon the new evidence. (See Docket Entry 12.) Under such circumstances, the undersigned will not consider those records in analyzing Plaintiff's assignment of error.

may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The United States Court of Appeals for the Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636,

but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ did not expressly assess Plaintiff's work-related abilities on a function-by-function basis (see Tr. 18-22); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and her findings that Plaintiff's IIH and vertigo (A) qualified as severe impairments (see Tr. 14), but (B) did not result in greater limitations than those reflected in the RFC (see Tr. 17-18).

Plaintiff's assertions regarding the function-by-function analysis fall short because the ALJ's evaluation of Plaintiff's subjective symptom reporting explains the ALJ's omission of allowances for off-task time, extra breaks, and absenteeism from the RFC. In that regard, the ALJ explicitly acknowledged Plaintiff's statements "that he experienced significant dizziness and impaired balance as a result of intracranial pressure, despite an extensive history of shunts and stents" (Tr. 18 (referencing Tr. 249)), "that he cannot bend without falling over and drops objects that he is holding" (id. (referencing Tr. 249)), and "and that he

continues to experience debilitating dizziness throughout each day, as well as daily headaches and fluid drainage in his ears" (id. (referencing Tr. 249-52, 257-58)). The ALJ, however, also found that "[Plaintiff]'s statements about the intensity, persistence, and limiting effects of his symptoms [we]re only partially consistent with the evidence of record and d[id] not support a finding of disability." (Id. (emphasis added).)

The ALJ supported that finding with the following analysis:

> [Plaintiff ] testified that he has been living independently for a year and renews his barbering license annually. [Plaintiff]'s Adult Function Report states that he is capable of shopping for an hour at a time. ([Tr. 432]). . . . He has denied gait instability and falls. ([Tr. 3231]). . . . The record refers to [Plaintiff] lifting weights of up to 120 pounds during the period at issue. ([Tr. 4945-46, 5376, 5394]). . . .[6]
>
> The record reflects numerous inconsistencies pertaining to [Plaintiff]'s condition during the period at issue and his work history both before and after the alleged onset date. As noted above, [Plaintiff]'s earnings record reflects no earnings since 2011 ([Tr. 391-93]), and [Plaintiff] reported at the time of his current application for [SSI] that he had not worked since 2011 ([Tr. 412-13]), and he testified initially that he had not worked since 2005 or 2008 and then revised this to 2010 or 2011. However, on questioning from his attorney, he testified he had worked from home as a barber "off and on," most recently approximately one month prior to the hearing. Also, as noted above, the record contains numerous references to work activity since 2011, including work at a barber shop ([Tr. 1353, 1371, 1414, 1657, 1733, 1953, 3077, 4683, 4685, 5352, 6189, 7738

---

[6] Although the ALJ cited to Exhibit 6F, pages 558 and 559, those pages do not contain any reference to Plaintiff's weight lifting (see Tr. 4945-46). The ALJ likely meant to cite to page 4882, which reflects that Plaintiff complained of "chest pain" that "began while he was bench pressing at the gym." (Tr. 4882.)

13

(duplicate of 3077), 8223 (duplicate of 5352)). As recently as September 2020, a treatment note indicates that he reported having done a drug test for a job ([Tr. 8507]), although [he] testified he had not undergone a drug test for a job. Given the other inconsistencies between [Plaintiff]'s testimony and the contemporaneous record, there is also some question as to the reliability of this testimony. [Plaintiff] testified he had renewed his barber's license annually, most recently in May 2020, and he testified at the hearing on May 7, 2021, that he would not be renewing it again due to an inability to work.

[Plaintiff] testified to having memory problems, and throughout the hearing, he asserted he was unable to recall various details about his work history and activities. As discussed herein, in numerous instances, his testimony was inconsistent with the contemporaneous notes of his own medical providers. The [ALJ] also notes that [Plaintiff] reported following the hearing that he had not been feeling well during the hearing ([Tr. 481]). While the [ALJ] does not suggest that [Plaintiff] was deliberately misstating any information, the [ALJ] finds the claimed inability to remember, as well as the inconsistencies between the hearing testimony and the contemporaneous treatment records, together warrant placing greater reliance on the contemporaneous records. It is notable, as well, that treatment records do not reflect ongoing issues with [Plaintiff]'s memory or cognitive functioning ([e].g., [Tr. 8603]).

(Tr. 19-21 (emphasis added).)

Plaintiff deems "the ALJ's reliance on [Plaintiff's] ability to work and renew his barber license, live alone, shop for up to an hour, etc[.,] throughout the relevant period [] misplaced." (Docket Entry 12 at 14.) In Plaintiff's view, "the ALJ . . . fail[ed] to consider the extent to which [Plaintiff] actually engaged in the activities that the ALJ relie[d] on to support her conclusion that [Plaintiff's] activities undermined his allegations." (Id. (citing Woods, 888 F.3d at 694-95 ("An ALJ may

14

not consider the *type* of activities the claimant can perform without also considering the *extent* to which []he can perform them." (brackets and italics added to match original))).)  In that regard, Plaintiff notes that "he testified that his adult son would visit him nearly every day to help[,] his son did his laundry and often brought him something to eat[,] . . . he no longer went to the grocery store because he could not stand and wait around, [and] that he only prepared quick meals and would then lay [sic] down." (Id. at 14-15 (internal quotation marks omitted).)  With regard to Plaintiff's work as a barber, he points out that "he would have to cancel [appointments] when he was not able to cut hair or not feeling well" (id. (citing Tr. 254)), "that [he] had only given one hair cut in the month prior to the hearing" (id. (citing Tr. 254)), "that in a good month . . . he would give 4-10 haircuts" (id. (citing Tr. 255)), and "that he might not renew his barber license when it came due again [in May 2021]" (id. (citing Tr. 244)). Plaintiff additionally points to his testimony "that[,] following his surgeries[,] he was no longer able to work out/exercise consistently due to his symptoms."  (Id. (citing Tr. 264).)  That argument fails for two reasons.

First, although Plaintiff testified at the hearing to only a limited ability to complete daily activities, work as a barber, and exercise (see Tr. 244, 254-55, 258, 260, 263-65), the ALJ pointed out in the above-quoted passage other, competing descriptions in

15

the record of Plaintiff's abilities to engage in such activities (see Tr. 19-20 (citing Tr. 432 (3/4/20 Function Report indicating that Plaintiff shopped in stores for one hour at a time), 3077 (9/14/18 telephone encounter with neurosurgery provider four days after first stent surgery reflecting Plaintiff's desire to return to work as barber and begin working out), 4683 & 4685 (3/7/19 ER visit for left chest pain from using left arm to turn barber chair), 4882 (8/9/19 ER treatment approximately five months after encephalocele repair for chest pain after bench pressing at gym), 5352 (5/22/19 PCP note two months following encephalocele repair containing Plaintiff's remark that he "st[ood] on his feet a lot through work"), 5376 (7/9/19 statement to PCP that Plaintiff does cardio and weights every day), 5394 (8/13/19 office visit with PCP documenting Plaintiff's complaint of chest pain after bench pressing 120 pounds), and 6189 (10/10/19 telephonic report to neurosurgery provider that Plaintiff "[wa]s a barber and drove to cut hair [that ] day")).[7] The ALJ expressly noted the

---

[7] The record contains many other examples of Plaintiff engaging in daily activities and regular physical exercise. (See Tr. 432-33 (3/4/20 Function Report indicating that Plaintiff used public transportation, handled his own finances, and attended Bible study and church each week), 3134 (9/26/18 neurosurgery release requested by Plaintiff "to resume all activities including lifting weights/working out at the gym")), 5365 (6/17/19 report to PCP that Plaintiff "had been doing a lot of cardio and weight training"), 5637 (11/15/19 report of abdominal pain after being active at gym), 8535 (9/22/20 remark to PCP that Plaintiff had been walking for exercise), 8638 (10/15/20 annual physical examination recording Plaintiff's remark that the room spins when he sits but that his symptoms dissipate with activity such as working out with weights or cardio), 8648 (11/10/20 visit with PCP documenting Plaintiff's report that he lifted weights five times per week), 8668 (12/15/20 PCP visit reflecting Plaintiff's statement that he "[wa]s implementing more cardio into his training regime"), 8691-92 (1/13/21 PCP treatment note containing Plaintiff's report that
(continued...)

16

inconsistencies in the evidence regarding Plaintiff's alleged memory difficulties and inability to work as a barber or engage in physical exercise, and explained that, although the ALJ "d[id] not suggest that [Plaintiff] was deliberately misstating any information, the [ALJ] f[ound] the claimed inability to remember, as well as the inconsistencies between the hearing testimony and the contemporaneous treatment records, together warrant[ed] placing greater reliance on the contemporaneous records." (Tr. 21.) Plaintiff has not provided the Court with any basis to disturb the ALJ's crediting of evidence reflecting a greater ability to engage in such activities. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

Second, the ALJ did not rely solely on Plaintiff's daily activities to discount his subjective symptom reports, but rather as one part of the ALJ's overall analysis. (See Tr. 18-22.) Plaintiff's ability to engage in such activities, even on a limited basis, provides some support, along with the medical and opinion evidence discussed by the ALJ, for the ALJ's conclusion that

---

[7] (...continued)
he "[wa]s exercising daily" and "ha[d] lost 7 pounds since his last visit"), 8724 (3/2/21 telehealth visit with PCP evidencing Plaintiff's remark that he continued to lift weights but "ha[d] been taking it easy with upper body exercises" due to left breast pain), 8762 (10/20/20 visit with physical therapist where Plaintiff deemed himself "independent" in activities of daily living except that his wife helped him put on his shoes)).

17

Plaintiff's IIH and vertigo (in combination with his other impairments) did not prevent him from performing a limited range of light work with postural and environmental restrictions (see Tr. 17-18).

The ALJ's evaluation of the opinion evidence additionally supports her omission of allowances for off-task time, extra breaks, or absenteeism from the RFC. In that regard, the ALJ found the opinions of the state agency medical consultants "generally persuasive" (Tr. 21), and those opinions contained light-exertion RFCs very similar to the ALJ's RFC and included no allowances for off-task time, extra breaks, or absenteeism (compare Tr. 17-18, with Tr. 278-79, 292-93). Moreover, none of Plaintiff's treatment providers offered opinions that Plaintiff's IIH and/or vertigo necessitated off-task time, extra breaks, or absenteeism at work, a fact which further undermines Plaintiff's instant argument. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (finding that lack of restrictions by treating physician supported ALJ's determination that the plaintiff did not qualify as disabled); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (holding that ALJ "is entitled to rely not only on what the record says, but also on what it does not say"); Jones v. Berryhill, No. 1:17CV703, 2018 WL 3849914, at *9 (M.D.N.C. Aug. 13, 2018) (unpublished) (noting significance of fact that record lacked "treating or examining physician opinion[s] that would support inclusion in the

18

RFC of more breaks, time off-task, or absences than typically tolerated in a competitive work environment"), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 4, 2018) (Schroeder, C.J.).

The ALJ's discussion of the medical evidence further supports the lack of restrictions in the RFC regarding off-task time, extra breaks, and absenteeism. In particular, the ALJ made the following pertinent observations:

- Plaintiff "has denied gait instability and falls" (Tr. 19 (citing Tr. 3231)) and reports showed his "[c]oordination has been normal" (<u>id.</u> (citing Tr. 3484, 3509, 5380, 5482, 8687));[8]

- "Lasix reduced the severity of [Plaintiff]'s dizziness" (<u>id.</u> (citing Tr. 8692));

- Plaintiff's "gait was consistently normal" (<u>id.</u> (citing Tr. 1862, 2524, 2723, 3233, 3484, 4880, 5482, 6479, 8198, 8687, 8721)), "[h]is range of motion has been intact" (<u>id.</u> (citing Tr. 4515, 4779, 5534, 5607, 7014, 8653, 8673, 8754)), and "[his] strength has been good" (<u>id.</u> (citing Tr. 2524, 3233, 3484, 4850, 5481, 5595, 8330));[9]

- "[t]reatment notes refer to significant improvement in his headaches after undergoing a craniotomy, [] earlier treatment notes described his headaches as mostly mild and intermittent (Tr. 20 (citing Tr. 3230, 3437, 4307, 7097)), and "[a]t other times, [he] denied experiencing headaches" (<u>id.</u> (citing Tr. 8197, 8330, 8680)); and

---

[8] The finding of normal coordination actually appears on page 3510 of the administrative transcript. (<u>See</u> Tr. 3510.)

[9] A finding of normal gait does not appear on page 4880 of the administrative transcript (<u>see</u> Tr. 4880), but a finding of "steady gait" appears on page 4852 (Tr. 4852; <u>see also</u> Tr. 4850). Normal range of motion appears on page 4778 rather than on page 4779. (<u>Compare</u> Tr. 4778, <u>with</u> Tr. 4779.)

19

- Plaintiff's "treatment notes contain no reference to him ambulating with an assistive device outside of an immediately post-operative period" (id.).

After discussing the medical evidence, the ALJ concluded that "the absence of any reference to [Plaintiff] ambulating with an assistive device in his medical records, as well as the lack of evidence of medical treatment or injuries resulting from a fall, support[ed] finding that [Plaintiff] ha[d] not required an assistive device to ambulate and that the significant postural limitations described in the [RFC] accommodate the limitations imposed by his dizziness." (Id. (emphasis added).)

Moreover, by pointing to record evidence Plaintiff views as supporting greater limitations in the RFC, he misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), sustained the ALJ's RFC findings, and not whether other record evidence weighed against those findings, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). Here, as detailed above, the ALJ supported her RFC findings with substantial evidence, and Plaintiff

has failed to show that the evidence he relies upon should have compelled the ALJ to include allowances for off-task time, extra breaks, and absenteeism in the RFC.

In light of the foregoing analysis, Plaintiff's first and only assignment of error provides no basis for relief.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 11) be denied, and that this action be dismissed with prejudice.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**

July 5, 2023